PER CURIAM.
Doster Construction Company, Inc. (“Doster”), appeals from the denial by the Jefferson Circuit Court of Doster’s motion to reconsider the summary judgment in favor of Marathon Electrical Contractors, Inc. (“Marathon”), concerning Doster’s third-party complaint alleging breach of contract and failure to procure insurance. We affirm in part, reverse in part, and remand.

I. Facts and Procedural History

Doster was the general contractor at a job site for an automobile-parts manufacturer referred to in the record as “Oxford Automotive” in Bessemer. It entered into *1280 a subcontract with Marathon, pursuant to which Marathon was to provide electrical work at the job site. The contract between Doster and Marathon contained two provisions pertinent to this action: an indemnity clause (“the indemnity clause”) and a clause concerning the provision of liability insurance (“the liability-insurance clause”). The indemnity clause provides as follows:
“Indemnity. $100.00 of the Subcontract Price is specific consideration for [Marathon’s] agreement to defend and indemnify [Doster] and others as provided in this Paragraph. To the fullest extent permitted by law, [Marathon] shall defend and indemnify [Doster], Owner, and Architect, and their respective directors, officers, agents, employees, successors, insurers, sureties, affiliates, and assigns (collectively, the ‘Indemnitees’) against, and assume any obligations of the Indemnitees for, all liabilities, claims, suits, actions, proceedings, damages, losses, judgments, and expenses (collectively, ‘Indemnified Losses’) including, but not limited to attorneys’ fees, that arise in any way, directly or indirectly, out of a failure by [Marathon] (including the [Marathon] Design Professionals) to: (a) carry out the Work in a safe manner; (b) strictly comply with any applicable laws, regulations, building codes, rules, or industry standards; (c) exercise reasonable care in the performance of the Work or to execute the Work in a non-negligent manner; or (d) strictly comply with the requirements of this Subcontract. [Marathon’s] obligation to defend and indemnify the Indemnitees shall not be diminished or excused merely because the negligence or other breach of a legal duty on the part of any Indemnitee also contributed to the Indemnified Loss. Provided, however, that if in any proceeding initiated by a third party, there is an apportionment of the relative contributions to the Indemnified Loss by the Indemnitees on the one hand, and [Marathon] on the other, then [Marathon] shall only be required to defend and indemnify the Indemnitees to the extent of [Marathon’s] proportionate contribution. [Marathon’s] obligations under this Paragraph do not limit any other right or obligation of indemnity that exists in favor of any Indemnitee. In the event that a claim is made by an employee of Subcontractor against an In-demnitee, [Marathon] shall defend and indemnify such Indemnitee to the same extent as if such claim were made by a non-employee, notwithstanding any statute or judicial decision that would otherwise limit [Marathon’s] liability. If and to the extent that the indemnification provided by this Paragraph should be construed to exceed any restriction established by law, then it is the intent of the parties that this Paragraph be deemed to be reformed and modified such that it affords to the In-demnitees the maximum indemnification allowed by such law, and any terms, words, and provisions of this Paragraph shall be deemed modified or deleted to the extent necessary to make this Paragraph valid and enforceable.”
The liability-insurance clause provides, in pertinent part:
“Liability Insurance. [Marathon] shall maintain at its own expense (a) all insurance required by applicable law; (b) all insurance required for subcontractors by the Prime Contract; and (c) the forms of insurance identified below in at least the amounts specified. [Marathon] shall have [Doster] designated and included as an additional insured on all such insurance. Coverage of [Dost- *1281 er] as an additional insured shall be primary, and not contributory or excess. [Marathon] waives all rights of recovery against [Doster], Owner, and Architect for any loss or damage covered by any insurance, including all rights that might otherwise accrue to any subrogee.”
Doster also entered into a subcontract with Steel City, Inc. (“Steel City), pursuant to which Steel City was to provide Doster with the weights and personnel necessary for testing an overhead crane. Though the timing of its execution is disputed by the parties,[1] both parties acknowledge that an employee of Doster signed a one-page invoice for overtime work that contained the following paragraph:
“[Doster] shall defend and indemnify [Steel City] and hold [Steel City] harmless from any and all losses, claims, costs ... and liability for personal injury or any other casualty losses (including property damage) arising from the performance of this Agreement, except in the case of reckless or willful misconduct by [Steel City’s] employees or agents who at such time are acting under the authority and control of [Steel City], provided however, during the performance of this Agreement, any and all of [Steel City’s] equipment operators, maintenance personnel or other employees or agents whose services are required for the operation of the equipment used hereunder are agreed and deemed to be under the ultimate power and control of [Doster] and as such are ‘loaned servants.’ ”
Les Unland was employed by Marathon as an electrician. On July 18, 2008, Steel City employees were testing an overhead crane when it malfunctioned. Unland had finished his work for the day when he was called back to the work site to troubleshoot the electrical system of the crane. In order to fix the problem, Unland used a scissor lift to raise himself to the overhead crane. Upon reaching the “cab” of the crane, Unland lowered to the project floor a remote that operated the crane. After working on the crane, Unland remounted the scissor lift to lower himself back to the floor. Both parties state that a Steel City employee picked up the crane remote and engaged the device, causing the crane to start moving. The crane collided with the scissor lift, knocking it over and causing Unland to fall 25 feet to the project floor. Unland sustained injuries and was taken to the hospital.
Unland sought and received workers’ compensation benefits from Marathon for the accident. On July 1, 2004, Unland sued Doster and Steel City, alleging that “Defendants Doster and Steel City placed the crane in motion causing it to push over the scissor lift” and that such action was “negligent, reckless, and careless” and resulted in Unland’s injuries. Pursuant to the indemnity clause of the contract between Doster and Marathon, Doster tendered Unland’s claims to Marathon, and Marathon, through its insurer, Amerisure Insurance Company, defended Doster. Amerisure eventually settled Unland’s claims against Doster for $400,000 in January 2006.
Steel City tendered Unland’s claims against it to Doster based on the invoice for overtime work, contending that the invoice constituted a contract for indemnification between Steel City and Doster. Doster refused to defend and indemnify Steel City, and Steel City filed a third- *1282 party cross-claim for defense and indemnification against Doster. Doster tendered the claim to Marathon, but Marathon viewed its defense and indemnity responsibility to have been completed after the settlement of Unland’s claims against Doster, and it therefore refused the tender. At the same time, Steel City sought to settle Unland’s claims against it, and its insurer, Zurich American Insurance Company (“Zurich”), settled the claims for $600,000 on January 17, 2006.
Following the settlement of Unland’s claims against Doster, the counsel Ameri-sure provided to Doster withdrew and counsel provided by Doster’s insurer, which was also Zurich, stepped in to defend Doster on Steel City’s cross-claim. On March 29, 2006, Doster filed a third-party complaint against Marathon containing two claims. First, Doster alleged that Marathon had breached the indemnity clause by refusing to defend and indemnify Doster on Steel City’s cross-claim. Second, Doster alleged that Marathon had breached the liability-insurance clause by failing to procure insurance coverage for Steel City’s cross-claim against Doster.
On February 7, 2007, Marathon moved for a summary judgment as to both claims asserted in Doster’s third-party complaint, contending that its contract with Doster did not cover Doster’s relationship with Steel City. Doster submitted a response to the motion, along with an affidavit from construction-safety consultant Jerry Gillis. In the affidavit, Gillis testified that, in his opinion, Unland failed to carry out his work in a safe manner, failed to comply with the industry standards, and, in short, failed to meet the standard of care in performing his work. Specifically, Gillis stated that proper procedure required Un-land to lock out the controls to the overhead crane or to tag out the electrical-power source to the crane while he was disembarking the crane via the scissor lift. By failing to lock out the controls, Unland did not ensure that he was clear of the path of the crane before others could control it.
After entertaining arguments, the trial court on March 2, 2007, entered a summary judgment in favor of Marathon regarding both of Doster’s claims, without explaining its reasons for doing so. Dost-er then filed a motion to reconsider the judgment. The trial court denied the motion on May 31, 2007. Doster appeals from the judgment of the trial court with respect to both counts of its third-party complaint against Marathon.
In March 2008, Steel City and Doster, through their insurer Zurich, reached a settlement on Steel City’s cross-claim for defense and indemnity in the amount of $368,288. Hence, that is the amount Dost-er seeks on its indemnity claim against Marathon.

II. Standard, of Review

“ ‘The standard of review applicable to a summary judgment is the same as the standard for granting the motion.... ” McClendon v. Mountain Top Indoor Flea Market, Inc., 601 So.2d 957, 958 (Ala.1992).
“ ‘A summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. The burden is on the moving party to make a prima facie showing that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. In determining whether the movant has carried that burden, the court is to view the evidence in a light most favorable to the nonmoving party and to draw all reasonable inferences in favor of that party. To defeat a properly sup *1283 ported summary judgment motion, the nonmoving party must present “substantial evidence” creating a genuine issue of material fact — “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” Ala.Code 1975, § 12-21-12; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989).’
“Capital Alliance Ins. Co. v. Thorough-Clean, Inc., 639 So.2d 1349, 1350 (Ala. 1994). Questions of law are reviewed de novo. Alabama Republican Patty v. McGinley, 893 So.2d 337, 342 (Ala. 2004).”
Pritchett v. ICN Med. Alliance, Inc., 938 So.2d 933, 935 (Ala.2006).

III. Analysis

The indemnity clause contains broad language. It provides that Marathon will “defend and indemnify” Doster “against, and assume any obligations of [Doster] for, all liabilities, claims, suits, actions, proceedings, damages, losses, judgments, and expenses ... that arise in any way, directly or indirectly ” out of, among other things, any “failure by Marathon ... to carry out the Work in a safe manner,” to “strictly comply with any ... industry standards,” or to “exercise reasonable care in the performance of the Work or to execute the Work in a non-negligent manner.” To simplify slightly, the indemnity clause requires Marathon to indemnify Doster for any loss Doster may suffer as a result of any negligence attributable to Marathon. It contains no exception for any loss to which Doster’s own negligence may have contributed.[2]
Under the circumstances presented, then, unless the terms of the indemnity clause are in some way ambiguous, we are required to enforce it as it is written.
“Under general Alabama rules of contract interpretation, the intent of the contracting parties is discerned from the whole of the contract. Where there is no indication that the terms of the contract are used in a special or technical sense, they will be given their ordinary, plain, and natural meaning. If the court determines that the terms are unambiguous (susceptible of only one reasonable meaning), then the court will presume that the parties intended what they stated and will enforce the contract as written.”
Homes of Legend, Inc. v. McCollough, 776 So.2d 741, 746 (Ala.2000).
“A contractual provision is ambiguous if it is reasonably susceptible of more than one meaning.” FabArc Steel Supply, Inc. v. Composite Constr. Sys., Inc., 914 So.2d 344, 357 (Ala.2005). Marathon does not offer any reason why the terms of the indemnity clause would be considered ambiguous, and we find none. Cf. Extermitech, Inc. v. Glasscock, Inc., 951 So.2d 689, 693-94 (Ala.2006) (finding an indemnity provision in a contract to be ambiguous because it did not contain a date specifying when one party’s obligation to indemnify *1284 the other became effective, and “each party’s interpretation of that provision [was] reasonably plausible”).
The indemnity clause contains no language excepting from Marathon’s indemnity obligation any loss or liability that may be suffered by Doster only by virtue of Doster’s own contractual undertakings, e.g., Doster’s own indemnity agreement with a third party such as Steel City, relating to the electrical work at the job site. Instead, it categorically states that Marathon “assume[s] any obligations” of Doster for “all liabilities, claims, [and] losses” that arise directly or indirectly from Marathon’s negligence. Thus, the trigger for the indemnity clause is negligence on Marathon’s part at the Oxford Automotive job site, and Doster presented undisputed evidence to the trial court that Marathon employee Unland’s own negligence contributed to the accident.
Doster’s indemnity agreement with Steel City clearly constitutes an obligation of Doster. Doster’s settlement with Steel City is a liability incurred as a result of Unland’s claim against Steel City for the injury he sustained at the Oxford Automotive job site. Therefore, under a plain and unambiguous reading of the indemnity clause, Steel City’s claim against Doster fell within the parameters of the indemnity clause because it concerned a liability of Doster that arose indirectly from negligence attributable to Marathon. Thus, the trial court erred in entering a summary judgment in favor of Marathon concerning Doster’s indemnity claim for amounts paid by it to Steel City.
Doster also contends that the trial court erred in entering a summary judgment as to its claim that Marathon failed to procure insurance for the cross-claim made by Steel City.
“Agreements to procure insurance are generally enforceable under Alabama law, and a party who breaches such an agreement is liable for damages resulting from the failure to obtain the promised insurance....
“A contractual obligation to indemnify is distinct from a contractual obligation to procure insurance. Under an agreement to indemnify, the promisor assumes liability for all injuries and damages upon the occurrence of a contingency. In contrast, an agreement to obtain insurance involves the promisor’s agreement to obtain or purchase insurance coverage, regardless of whether [a] contingency occurs.... ”
Goodyear Tire & Rubber Co. v. J.M. Tull Metals Co., 629 So.2d 633, 639 (Ala.1993).
Doster concedes that Marathon named Doster as an additional insured on its policies and that Marathon provided Doster with a certificate of insurance listing it as an additional insured. Marathon’s insurance carrier, Amerisure, did, in fact, perform its duties under the insurance policies and the liability-insurance clause as to Un-land’s claim against Doster, paying Unland $400,000 to settle that claim. Doster argues, however, that Marathon likewise had a duty to procure insurance for Steel City’s cross-claim against Doster.
Unlike the indemnity clause, the liability-insurance clause is not sufficiently broad to encompass Steel City’s cross-claim against Doster. The liability-insurance clause provides that Marathon must “have [Doster] designated and included as an additional insured” on the policies Marathon was required to obtain for its work at the Oxford Automotive job site. The liability-insurance clause does not state that Marathon was required to procure insurance to insure Doster for liabilities to another Doster subcontractor Doster might contractually assume; Doster cites no provision of the liability-insurance *1285 clause with which Marathon failed to comply in this regard. Marathon named Dost-er as an additional, primary insured in its policies and provided Doster with proof of that insurance. Under the liability-insurance clause, Marathon performed its duty to procure insurance, and Doster’s breaeh-of-contract claim in this regard necessarily fails.

TV. Conclusion

Based on the foregoing, the trial court erred in entering a summary judgment in favor of Marathon as to Doster’s claim alleging breach of contract as to the indemnity clause, while it correctly entered a summary judgment as to Doster’s claim alleging breach of contract as to the liability-insurance clause. Accordingly, the trial court’s judgment is affirmed in part and reversed in part, and the cause is remanded.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
COBB, C.J., and LYONS, WOODALL, STUART, SMITH, BOLIN, PARKER, and SHAW, JJ., concur.
MURDOCK, J., concurs in part and dissents in part.

. Marathon alleges that a Doster employee signed the invoice the day after the accident, without knowing it contained an indemnification agreement. Doster alleges that the invoice was signed before the accident.

. Ordinarily, indemnification for an indemni-tee’s own negligence requires “clear and unequivocal language.” Harsco Corp. v. Navistar Int’l Transp. Corp., 630 So.2d 1008, 1011 (Ala. 1993) (citing Industrial Tile, Inc. v. Stewart, 388 So.2d 171, 176 (Ala. 1980)). The indemnification clause at issue here includes the following sentence: "[Marathon's] obligation to defend and indemnify the Indemni-tees shall not be diminished or excused merely because the negligence or other breach of a legal duly on the part of any Indemnitee also contributed to the Indemnified Loss.” No issue is presented on appeal as to the adequacy of this language.