Rel: May 15, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2025-2026

_____

### SC-2025-0433

_____

## U.S. Bank Trust National Association, as trustee of the Igloo Series IV Trust, and SN Servicing Corporation

## v.

## Marco J. Bonilla

### Appeal from Shelby Circuit Court
### (CV-23-900315)

McCOOL, Justice.

U.S. Bank Trust National Association, as trustee of the Igloo Series IV Trust ("U.S. Bank"), and SN Servicing Corporation ("SN") appeal from a summary judgment that the Shelby Circuit Court entered against them and in favor of Marco J. Bonilla.  That judgment awarded Bonilla $114,000 in compensatory damages, plus $14,913.70 in interest, and awarded him $75,000 in punitive damages.  For the reasons set forth herein, we affirm the judgment in part, reverse it in part, and remand the case for further proceedings.

Facts and Procedural History

In 2007, Elizabeth Ellison obtained a loan to purchase certain real property ("the Ellison property") located in Shelby County.  That loan was secured by a mortgage and was eventually sold to U.S. Bank, and SN serviced the loan on behalf of U.S. Bank.  It appears that Ellison later defaulted on her loan, and, in April 2022, U.S. Bank purchased certain real property at a foreclosure sale in Shelby County.  The foreclosure deed identified the foreclosed property as the property located at "77 Wildwood Chapel Rd." in Columbiana, and the deed indicated that that property was the Ellison property.

In May 2022, SN contracted with Paul Garris, a real-estate broker, to sell the property that U.S. Bank had purchased at the foreclosure sale. Garris testified in his deposition that the first step for him to take in conducting that sale was "to check occupancy," which required him to "go to the property … to physically determine occupancy." However, when Garris "went to Wildwood Chapel Road," he "did not find a 77 marked on a mailbox or a house." According to Garris, "that's not unusual with rural properties," so he later checked "to see if any of the tax records mentioned 77 Wildwood." After reviewing those records, Garris discovered that the foreclosed property appeared to be "a bricked over … double-wide trailer," so he relayed that information to his contact at SN, who "had [him] go check occupancy on it."

When Garris arrived at the double-wide trailer, he "knocked on the door and met Ellison, who was living there at the time." Garris told Ellison that he "th[ought] th[e] property might have been foreclosed" and "ask[ed] her about the address." Ellison told Garris that the address of the property was "actually 67 Wildwood Chapel Road but it could have been 77 at one time," and she "said that she didn't know that it was foreclosed but she had been five or six months behind on her payments

3

so it might have been." Garris then relayed that information to his contact at SN. According to Garris, despite the uncertainty as to which property U.S. Bank had purchased at the foreclosure sale, no survey was conducted. Rather, Ellison simply agreed to vacate the Ellison property in exchange for $3,500, and Garris, on behalf of U.S. Bank, subsequently listed for sale the property located at "77 Wildwood Chapel Rd." despite the fact that, "to [Garris's] knowledge," "77 Wildwood Chapel Road" "does not exist."

In August 2022, U.S. Bank contracted to sell Bonilla the property located at "67 Wildwood Chapel Rd." for $95,000. However, before closing the sale, U.S. Bank and Bonilla "amended [the contract] to have the correct address as … 77 Wildwood Chapel Rd." Both Garris and Bonilla believed that the Ellison property was "the house Bonilla was agreeing to purchase," and Bonilla later attested in his affidavit that "[i]t was expressly represented to [him] by Garris that the property [he] entered into a contract to buy was a "double wide manufactured home that had been bricked on all four sides." The contract contained a provision recommending that Bonilla "obtain a survey," but Bonilla checked the box indicating that he was "not request[ing] a survey by a registered

4

Alabama land surveyor." U.S. Bank and Bonilla subsequently closed the real-estate transaction, and U.S. Bank executed a special warranty deed conveying to Bonilla the property located at "77 Wildwood Chapel Road." Garris then personally delivered to Bonilla the keys to the double-wide trailer that was located on the Ellison property. However, the legal description of the property transferred by the special warranty deed is similar, but not identical, to the legal description of the property transferred by the foreclosure deed.

Bonilla "first … learned there was a problem" with his purchase "[w]hen [he] tried to sell the property" to another individual for $114,000. During the course of arranging that sale, someone at a title company "informed [Bonilla] that the legal description [of the property he was attempting to sell, i.e., the Ellison property,] did not match the address on the property that [he] had purchased," and that person told Bonilla that the "house [he] actually bought" was a house located at "101 Wildwood," which was a "couple houses down the street." That property, according to Bonilla, appraised for a little more than half the value of the Ellison property. Bonilla conceded that, "if [he] had had a survey done

5

before [he] closed on [his] purchase, [he] would have known it was 101 [Wildwood]" that he was purchasing.

Bonilla later sued U.S. Bank and SN ("the defendants"), asserting claims of conversion, breach of contract, negligence, and wantonness, as well as a claim seeking the recission of the special warranty deed.[1] In support of his claims, Bonilla alleged that U.S. Bank had not sold him the property that he had actually contracted to buy, i.e., the Ellison property; that U.S. Bank in fact could not have sold him the Ellison property because it "did not have good title to convey"; that Ellison was actually "still the owner" of the Ellison property; that, as a result, he had been unable to sell the Ellison property to another individual who had agreed to purchase it for $114,000; and that U.S. Bank had "not returned the purchase price [he had] paid for [the Ellison property]."

The defendants moved for a summary judgment, arguing that "there is no genuine issue of fact to be tried and that [they] are entitled

_____

[1]Bonilla also asserted a claim of "gross negligence/wantonness," separate and apart from his claims for negligence and wantonness. However, "[t]he word 'gross,' when used in connection with the word 'negligence,' implies nothing more than simple negligence." Town of Loxley v. Coleman, 720 So. 2d 907, 909 (Ala. 1998). Likewise, there is no difference between a claim of "gross wantonness" and wantonness.

to judgment as a matter of law." In the brief they submitted in support of that motion, the defendants admitted that Bonilla "did not own the [Ellison property]" and that he had instead purchased the "real property located at 101 Wildwood Chapel Road." However, the defendants argued that Bonilla's claims "fail as a matter of law because the contract between the parties specified that the sale of the property was 'AS IS.'" The defendants also argued that Bonilla's claims were "barred under the doctrine of contributory negligence." In support of that argument, the defendants noted Bonilla's concessions that U.S. Bank had recommended that he obtain a survey before closing the real-estate transaction and that, if he had done so, "he would have known what property he was actually buying."

Bonilla also moved for a summary judgment. In support of his motion, Bonilla argued that it was undisputed that U.S. Bank had contracted to sell the Ellison property to him, that U.S. Bank had not done so because it did not have title to the Ellison property, that U.S. Bank had instead given him title to a different (and less valuable) property, and that U.S. Bank had refused to return the $95,000 that he had paid to purchase the Ellison property. Thus, according to Bonilla, he

7

was entitled to a summary judgment on each of his claims, including his claim seeking the rescission of the special warranty deed.

The circuit court heard oral arguments on the competing summary-judgment motions, but, if a transcript of that hearing is available, it has not been provided to this Court. Following the hearing, the circuit court entered a summary judgment in favor of Bonilla on all of his claims. In terms of relief, the circuit court rescinded the real-estate transaction between U.S. Bank and Bonilla and ordered Bonilla "to return the property he was deeded" by executing a quitclaim deed to U.S. Bank. As for damages, the circuit court found that Bonilla was entitled to $114,000 in compensatory damages, plus $14,913.70 in interest, on his conversion, breach-of-contract, and negligence claims. Those compensatory damages were based on the $95,000 that Bonilla had paid to purchase the Ellison property -- which U.S. Bank had refused to return to him -- plus $19,000 "for the lost profit from [his] [attempted] sale of" the Ellison property to another individual for $114,000. The circuit court also awarded Bonilla $75,000 in punitive damages on his wantonness claim.

Pursuant to Rule 59, Ala. R. Civ. P., the defendants filed a motion for a new trial or, in the alternative, a motion to vacate the summary

8

judgment, arguing that a trial on the merits was warranted. The defendants also expressly requested a hearing on their motion. However, the circuit court did not hold a hearing on the motion, and, on June 3, 2025, the court denied the motion in an order that states: "MOTION FOR NEW TRIAL filed by [the defendants] is hereby DENIED." (Capitalization in original.) The defendants filed a timely notice of appeal.

## Discussion

The defendants argue that the circuit court erred by entering a summary judgment in favor of Bonilla on his claims of conversion, breach of contract, negligence, and wantonness. Specifically, the defendants argue that there are legal and factual issues that precluded a summary judgment on those claims. The defendants do not argue, however, that the circuit court erred by entering a summary judgment in favor of Bonilla on his claim seeking the rescission of the special warranty deed. The defendants also argue that the circuit court erred by denying their postjudgment motion without first holding a hearing. We will address those arguments in turn.

I.

9

The defendants argue that there were both legal and factual issues that precluded a summary judgment on Bonilla's conversion, breach-of-contract, negligence, and wantonness claims. Because it is possible that a summary judgment was proper as to some but not all of those claims, we will address each of those claims separately. See Doster Constr. Co. v. Marathon Elec. Contractors, Inc., 32 So. 3d 1277 (Ala. 2009) (reversing a summary judgment as to one of the plaintiff's claims but affirming the judgment as to the other claim).

## A. The Conversion Claim

### 1. The Defendants' Legal Argument

The defendants argue that the circuit court erred by entering a summary judgment in favor of Bonilla on his conversion claim because, they say, "a claim for conversion of money is improper if the money in question cannot be specifically identified." The defendants' brief, p. 22. According to the defendants, this Court "has held repeatedly that what must be identified is not a specific sum of money, but rather the specific money itself." Id. (emphasis in original). In other words, the defendants argue that "Alabama law is clear that a plaintiff may not use a conversion

10

claim in order to simply recover a sum of money purportedly owed to him by the defendant." Id., p. 23.

The problem with this argument is that, for all that appears in the record, the defendants raised it for the first time in their postjudgment motion, even though they clearly could have raised it before the circuit court entered the summary judgment.[2] As noted, the record reflects that the only arguments the defendants raised before the circuit court entered the summary judgment were their argument that "the contract between the parties specified that the sale of the property was 'AS IS'" -- an argument they have abandoned on appeal -- and their contributory-negligence argument -- an argument that, although raised on appeal, has no bearing on Bonilla's conversion claim. See USA Petroleum Corp. v. Hines, 770 So. 2d 589, 595 (Ala. 1999) (noting that contributory negligence is "not [a] defense[] to intentional torts"); and Schaeffer v.

---

[2]The circuit court held a hearing on the parties' competing summary-judgment motions, but, because there is no transcript of that hearing in the record, there is nothing before this Court indicating that the defendants raised this argument during the hearing. "This Court's appellate review is restricted to the record on appeal ...." Green v. Ingram, 794 So. 2d 1070, 1072 (Ala. 2001).

Poellnitz, 154 So. 3d 979, 989 (Ala. 2014) ("'Conversion is an intentional tort.'" (emphasis and citation omitted)).

"'"[A] trial court has the discretion to consider a new legal argument in a post-judgment motion, but [it] is not required to do so,"'" Espinoza v. Rudolph, 46 So. 3d 403, 416 (Ala. 2010) (citations omitted), and, when there is no indication that a trial court considered a new legal argument raised in a postjudgment motion, this Court will not presume that the trial court did so. See id. ("There is no indication that the trial court considered the merits of the legal argument raised for the first time in Jabez's postjudgment motion, and we will not presume that it did."). Here, the circuit court's postjudgment order merely states that the defendants' postjudgment motion was denied, so there is no indication that the court considered the defendants' new legal argument regarding Bonilla's conversion claim. Thus, because this Court will not presume that the circuit court considered that argument, the defendants cannot obtain relief on that argument on appeal. See id. (refusing to reverse a judgment based on an argument that had been raised for the first time in a postjudgment motion because there was no indication that the trial court had considered that argument).

12

### 2. The Defendants' Factual Arguments

In attempting to demonstrate that the circuit court erred by entering a summary judgment on Bonilla's claims, the defendants argue that the court's judgment "relie[d] on incorrect facts" and "omitted" "multiple facts that a jury could have considered." The defendants' brief, p. 13. The defendants also argue that the circuit court "failed to draw inferences in [their] favor." Id., p. 14. Thus, we must next determine whether those arguments require reversal of the summary judgment as to the conversion claim.

First, the defendants note that the judgment "states that Garris contacted Ellison '[a]fter [the] defendants determined that the correct parcel of real estate foreclosed on was the [Ellison property].'" The defendants' brief, p. 13 (emphasis in original). The defendants argue, though, that the evidence actually indicated that Garris contacted Ellison "well before any determination was made about the property." Id. (emphasis in original). In fact, the defendants argue, it was Garris's conversation with Ellison that "served as part of the basis for determining the correct parcel." Id. Thus, according to the defendants, "the circuit court's [judgment] gets this crucial fact wrong." Id.

However, we fail to see -- and the defendants have failed to explain -- why this incorrect fact is relevant to Bonilla's conversion claim. Bonilla's basis for that claim was that he had paid U.S. Bank $95,000 to purchase the Ellison property and that U.S. Bank had refused to return that consideration despite its "fail[ure] to convey good title to [him]." Those facts are undisputed and are unaffected by whether Garris's contact with Ellison occurred before or after the defendants made a determination as to which property U.S. Bank had purchased at the foreclosure sale. Thus, even if the circuit court "g[ot] this ... fact wrong," that error does not provide a basis for reversing the judgment as to the conversion claim. Cf. Rush v. Jacksonville State Univ., 439 So. 2d 9, 12 (Ala. 1983) ("[T]he opponent [of a motion for a summary judgment] must do more than show that a fact is disputed. He must show that a fact material to the resolution of the litigation is disputed. It is not enough to show that a fact which is immaterial to the cause is disputed.").

Second, the defendants point to the fact that the judgment states that they had chosen not to obtain a survey before closing the real-estate transaction with Bonilla but omits that Bonilla had also chosen not to obtain a survey -- a fact that, they say, constituted contributory

14

negligence. Once again, however, the defendants have failed to explain why that omitted fact is relevant to Bonilla's conversion claim, and we fail to see the significance of that omitted fact given that contributory negligence is not a defense to a conversion claim. Thus, the mere fact that the judgment does not mention Bonilla's choice not to obtain a survey does not provide a basis for reversing the summary judgment as to the conversion claim. Rush, supra.

Third, the defendants argue that the circuit court "failed to draw inferences in [their] favor." The defendants' brief, p. 14. In support of that argument, the defendants note that the judgment "states that [the defendants] 'knew or should have known or suspected that … Bonilla was operating under a false belief as to the location of the property, and [the defendants] knew or suspected that the conveyance in question did not truly express the intention of the parties.'" Id., p. 15. The defendants argue, though, that "there is plentiful evidence from which a fair-minded juror could determine that [the defendants] did not know or suspect that Bonilla intended to purchase a different property or was being sold the wrong property." Id., p. 16. Once again, we fail to see -- and the defendants, for a third time, have failed to explain -- why this issue of

15

fact matters with respect to the conversion claim. Regardless of the defendants' state of mind at the time of U.S. Bank's real-estate transaction with Bonilla, it is an undisputed fact that U.S. Bank did not provide Bonilla with good title to the Ellison property and yet has refused to return the $95,000 he paid to purchase that property.

Finally, the defendants argue that "a fact question exists as to what property was sold to Bonilla." The defendants' brief, p. 16. In short, the defendants argue that a jury could potentially find from the evidence that the special warranty deed "effectively convey[ed] the [Ellison property]" to Bonilla. Id., p. 17. However, for all that appears in the record, the defendants raised this argument for the first time in their postjudgment motion, and, as noted, there is no indication that the circuit court exercised its discretion to consider it. Thus, the defendants cannot obtain relief on this argument on appeal. Espinoza, supra. Furthermore, it was undisputed at the time the circuit court entered the summary judgment that Bonilla had not purchased the Ellison property. Indeed, the defendants admitted in their summary-judgment motion that Bonilla "believed he had purchased [the Ellison property], when in fact he had not," and that he "in fact [does] not own the [Ellison property]."

16

(Emphasis added.) The defendants also admit that fact in the "Statement of Facts" section of the brief they filed in this Court, conceding that "the property [Bonilla] purchased was <u>not</u> the [Ellison] property." The defendants' brief, p. 3 (emphasis added).

### 3. Conclusion on the Conversion Claim

For the foregoing reasons, the defendants have not demonstrated that the circuit court erred by entering a summary judgment in favor of Bonilla on his conversion claim. Accordingly, we affirm that aspect of the judgment, as well as the awards of compensatory damages and interest that were based on that claim. <u>See</u> <u>Soutullo v. Mobile Cnty.</u>, 58 So. 3d 733, 738 (Ala. 2010) ("In order to secure a reversal, 'the appellant has an affirmative duty of showing error upon the record." (quoting <u>Tucker v. Nichols</u>, 431 So. 2d 1263, 1264 (Ala. 1983))).

### B. The Breach-of-Contract and Negligence Claims

The defendants next argue that the circuit court erred by entering a summary judgment in favor of Bonilla on his breach-of-contract and negligence claims. However, we have already determined that the summary judgment is due to be affirmed as to the conversion claim, and, as noted, the circuit court provided the "same recovery" for that claim

17

that it provided for the breach-of-contract and negligence claims --
$114,000 in compensatory damages plus $14,913.70 in interest.[3]
Consequently, even if we were to reverse the summary judgment as to
the breach-of-contract and negligence claims, the defendants would still
be liable to Bonilla for those compensatory damages and interest by
virtue of our affirmance of the summary judgment as to the conversion
claim. In other words, reversal of the summary judgment as to the
breach-of-contract and negligence claims would provide no relief to the
defendants, and affirming the judgment as to those claims cannot harm
them. Thus, even if the circuit court erred by entering a summary
judgment in favor of Bonilla on those claims, that error was harmless
error that does not entitle the defendants to relief. See Rule 45, Ala. R.
App. P. (providing that a judgment may not be reversed unless "the error
complained of has probably injuriously affected substantial rights of the
parties"). See also Nguyen v. Watts, 605 S.W.3d 761, 792 (Tex. App.
2020) (holding that any error in entering a summary judgment in favor
of the defendants as to the plaintiffs' invasion-of-privacy claim was

---

[3]The circuit court did not provide $114,000 in compensatory damages for each of those three claims; rather, it provided that a total of $114,000, plus interest, would make Bonilla whole.

18

harmless error, given that the appellate court had already decided to affirm the summary judgment in favor of the defendants as to other claims that "overlap[ped] and [were] intertwined with" that claim). We therefore affirm the summary judgment as to the breach-of-contract and negligence claims.

## C. The Wantonness Claim

The defendants also argue that the circuit court erred by entering a summary judgment in favor of Bonilla on his wantonness claim. As a threshold matter, we note that it was the wantonness claim that served as the basis for the circuit court's award of punitive damages. Thus, the harmless-error analysis that we applied to the breach-of-contract and negligence claims in Part I.B., supra, is not applicable to the circuit court's ruling on the wantonness claim. We must therefore consider the merits of the defendants' argument regarding that claim.

To prevail on his wantonness claim at trial, Bonilla would have to prove that the defendants "(1) consciously did some act or omitted some duty (2) '"'while knowing of the existing conditions and being conscious that, from doing or omitting an act, injury will likely or probably result.'"'" Motley v. Express Servs., Inc., 386 So. 3d 766, 775 (Ala. 2023)

19

(emphasis added; emphasis on "and" omitted; citations omitted). In other words, wantonness is a state of mind. <u>Ferguson v. Baptist Health Sys., Inc.</u>, 910 So. 2d 85, 92-93 (Ala. 2005). "As a general proposition, questions concerning the state of mind a person had when he performed a particular act are unsuited for resolution on a motion for summary judgment." <u>Andrews v. Alabama Eye Bank</u>, 727 So. 2d 62, 65 (Ala. 1999). Stated differently, "[w]antonness," like other mental states, is generally "a question of fact for the jury" to resolve. <u>Cash v. Caldwell</u>, 603 So. 2d 1001, 1003 (Ala. 1992).

The defendants argue that a summary judgment was improper as to the wantonness claim because, they say, the circuit court "impermissibly determined dispute[d] facts about [the defendants'] state of mind." The defendants' brief, p. 17. In its summary judgment, the circuit court stated: "The court finds that the defendants <u>consciously</u> engaged in conduct, 'while <u>knowing</u> of the existing conditions and being <u>conscious</u> that, from doing or omitting to do an act, injury would likely or probably result.'" (Emphasis added; citation omitted.) In other words, the circuit court made a finding of fact regarding the defendants' mental state, i.e., that they had acted wantonly with respect to U.S. Bank's real-

20

estate transaction with Bonilla. Although there is some evidence upon which a jury could potentially find that the defendants acted wantonly, the defendants correctly note that a jury could also potentially determine that they were merely "mistaken as to the actual property that was foreclosed," id., p. 18, which would not constitute wantonness, or, at worst, that they were negligent. See Southland Bank v. A & A Drywall Supply Co., 21 So. 3d 1196, 1216-17 (Ala. 2008) (noting that a mistake does not constitute wantonness); and Ex parte Dixon Mills Volunteer Fire Dep't, Inc., 181 So. 3d 325, 333 (Ala. 2015) (discussing the difference between negligence and wantonness).

We therefore agree with the defendants' argument that, in entering a summary judgment in favor of Bonilla on his wantonness claim, the circuit court usurped the jury's role by resolving a disputed issue of fact regarding the defendants' mental state. Thus, we reverse the summary judgment as to the wantonness claim, along with the award of punitive damages that was based on that claim, and remand the case to the circuit court for further proceedings on that claim.

II. The Lack of a Hearing on the Postjudgment Motion

The defendants argue that the circuit court erred by denying their postjudgment motion without first holding a hearing. In support of that argument, the defendants correctly note that, "'if a party requests a hearing on its motion[] for a new trial, the court must grant the request.'" Drinkard v. Perry, 377 So. 3d 485, 500 (Ala. 2022) (citation omitted). However, the defendants concede that, "[a]lthough it is error for the [circuit] court not to grant such a hearing, this error is not necessarily reversible error." Chism v. Jefferson Cnty., 954 So. 2d 1058, 1086 (Ala. 2006). See also P.T.S. v. S.S., 406 So. 3d 109, 114 (Ala. Civ. App. 2024) (noting that "'[t]he failure to hold a hearing on a posttrial motion is not always reversible error'" (citation omitted)). Rather, the "'"failure to grant a hearing on a motion for a new trial … is reversible error only if it 'probably injuriously affected substantial rights of the parties.'"'" Drinkard, 377 So. 3d at 500 (citations omitted). This Court has also held that, "'if an appellate court determines that there was no probable merit to the [postjudgment] motion, it may affirm based on the harmless-error rule.'" Id. (citation omitted).

In this case, the defendants requested -- but were denied -- a hearing on their postjudgment motion. However, we have already

22

determined that the summary judgment must be reversed as to the wantonness claim. Thus, with respect to that claim, the circuit court's failure to hold a hearing was harmless error because it did not "'"'probably injuriously affect[] [the defendants'] substantial rights.'"'" Drinkard, 377 So. 3d at 500 (citations omitted). As for the remaining claims, if the circuit court's failure to hold a hearing was not reversible error with respect to the conversion claim, then, for the reasons set forth in Part I.B., supra, it also was not reversible error with respect to the breach-of-contract and negligence claims.

That said, the defendants' postjudgment motion challenged the summary judgment on the conversion claim by raising a new legal argument and various factual arguments. However, we have already explained that the circuit court was not obligated to consider the defendants' new legal argument, and, for all that appears in the record, the court did not consider that argument. Thus, to require the circuit court to hold a hearing on the defendants' postjudgment motion would effectively be to hold that the circuit court was required to consider that new legal argument. This Court will not require the circuit court to hold a hearing to consider a new legal argument that the circuit court was

under no obligation to consider at all. As for the defendants' factual arguments, we have already explained in Part I.A.2., <u>supra</u>, that those arguments do not provide a basis for reversing the summary judgment as to the conversion claim. <u>See</u> <u>Drinkard</u>, 377 So. 3d at 500 (noting that the failure to hold a hearing on a postjudgment motion is harmless error "'if an appellate court determines that there was no probable merit to the [postjudgment] motion'" (citation omitted)). For those reasons, the circuit court's failure to hold a hearing on the defendants' postjudgment motion was harmless error with respect to the conversion claim, and, for the reasons set forth in Part I.B., <u>supra</u>, that error was therefore also harmless with respect to the breach-of-contract and negligence claims.

<u>Conclusion</u>

The summary judgment in favor of Bonilla as to the conversion, breach-of-contract, and negligence claims, as well as the award of compensatory damages and interest that was based on those claims, is affirmed. The summary judgment in favor of Bonilla as to the wantonness claim, as well as the award of punitive damages that was based on that claim, is reversed, and the case is remanded to the circuit court for further proceedings consistent with this opinion.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

Stewart, C.J., and Shaw, Bryan, and Mendheim, JJ., concur.